MARC A. PILOTIN
Regional Solicitor
ANDREW J. SCHULTZ
BORIS ORLOV
KATHERIN E. CAMERON
Counsel for Wage and Hour
ANDREW M. KATZ (CSBN 350024)
Senior Trial Attorney
NISHA PAREKH (CSBN 318393)
Trial Attorney
UNITED STATES DEPARTMENT OF LABOR
312 N. Spring Street, Suite 720
Los Angeles, CA 90012-4701
Telephone: 213-894-3950
Parekh.nisha@dol.gov
*Attorneys for Plaintiff Julie A. Su,*
*Acting United States Secretary of Labor*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| | Case No. 2:23-cv-08185 |
| JULIE A. SU,<br>     Acting Secretary of Labor,<br>     United States Department of Labor,<br><br>                                        Plaintiff,<br>     v.<br><br>THE EXCLUSIVE POULTRY, INC., et al.,<br><br>                                        Defendants. | **MEMORANDUM OF POINTS AND AUTHORITIES ISO SECRETARY'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Date:<br>Time:<br><br>Judge:      Judge Not Yet Assigned |

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ...................................................................................... 1

II.  **FACTUAL BACKGROUND** ................................................................... 2

    A.   Tony Bran Controls the Corporate Defendants and Employs the Cutter and Packer Employees. ........................................................3

    B.   Employees Work More than 40 Hours in a Week and Defendants Do Not Pay an Overtime Premium. ........................................................4

    C.   Defendants Employ Minor Employees that Perform Hazardous Job Duties in Unsafe Working Conditions. ...................................................4

    D.   Defendants Interfered with the DOL's Investigation and Retaliated Against Employees ...................................................................................5

    E.   Defendants Refused To Stop Shipping Hot Goods .............................6

III. **A TEMPORARY RESTRAINING ORDER IS REQUIRED TO RESTRAIN DEFENDANTS' OPPRESSIVE CHILD LABOR, RETALIATION, AND WAGE VIOLATIONS PROHIBITED BY FLSA.** ............................................. 7

    A.   The Acting Secretary is Likely to Succeed on the Merits ...................8

        1.   Defendant Tony Bran and The Exclusive Poultry, Inc. Will Be Held Liable for Violations of the FLSA and Must Be Bound by an Injunction ............................................................................. 9

        2.   Defendants Employ Oppressive Child Labor in Violation of the FLSA ...........................................................................................9

        3.   Defendants Have Violated the FLSA Overtime Provisions .....11

        4.   Defendants Interfered with the Acting Secretary's Investigation ...................................................................................................11

        5.   Defendants Retaliate against Employees for FLSA-Protected Activities .................................................................................12

            i.   Employees Have Engaged in Protected Activity ..........13

          ii.     Defendants Have Taken an Adverse Action. .................13

          iii.    There Is A Causal Link Between the Protected Activity and Adverse Action. ....................................................14

    6.     Defendants Do Not Maintain Accurate Employee Time and Pay Records...............................................................................14

    7.     Defendants Have Violated the FLSA's "Hot Goods" Provisions...............................................................................15

B.    Defendants' Employees, the Department of Labor, and the Public Will Suffer Irreparable Harm Absent a Temporary Restraining Order. .....17

    1.     Defendants' Employment of Minors in Oppressive Child Labor Inherently Causes Irreparable Harm to the Minors and to the Public.....................................................................................18

    2.     Defendants' Failure to Pay Overtime Causes Irreparable Harm. ....................................................................................19

    3.     Defendants' Interference of the Secretary's Investigation, including Retaliation, causes Irreparable Harm to the Acting Secretary.................................................................................19

    4.     Defendants' Failure to Maintain Accurate Employee Time and Pay Records Causes Irreparable Harm to the Acting Secretary. ....................................................................................20

    5.     Defendants Introduction of "Hot Goods" into the Stream of Interstate Commerce Causes Irreparable Harm to the Acting Secretary, Employees, and the Public.......................................21

C.    The Balance of Equities and the Public Strongly Favor the Acting Secretary.................................................................................22

IV.    **CONCLUSION** ................................................. **22**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acosta v. RK Apparel Inc.*,
  2018 WL 1942400 (C.D. Cal. Mar. 15, 2018)......................................21

*Acosta v. Southwest Fuel Management, Inc.*,
  2018 WL 739425 (C.D. Cal. Feb. 2. 2018) .........................................13

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...........................................................7

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  643 F.3d 1165 (9th Cir. 2010) ...........................................................18

*Arcamuzi v. Continental Air Lines, Inc.*,
  819 F.2d 935 (9th Cir. 1987) .............................................................19

*Blackie v. State of Me.*,
  75 F.3d 716 (1st Cir. 1996)................................................................14

*Bonnette v. Cal. Health & Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983) ...........................................................9

*Cal Pharms. Ass'n v. Maxwell-Jolly*,
  572 F.3d  (9th Cir. 2009) ...................................................................21

*Carrillo v. Schneider Logistics, Inc.*,
  823 F. Supp. 2d 1040 (C.D. Cal. 2011) ..............................................19

*Citicorp Industrial Credit, Inc., v. Brock*,
  483 U.S. 27 (1987)................................................................ 15, 16, 17

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
  340 F.3d 810 (9th Cir. 2003) .............................................................7

*Conner v. Schnuck Markets, Inc.*,
  121 F.3d 1390 (10th Cir. 1997) .................................................. 13, 14

*Danneskjold v. Hausrath*,
  82 F.3d 37 (2d Cir. 1996)...................................................................20

*F.T.C. v. Consumer Def., LLC*,
  926 F.3d 1208 (9th Cir. 2019) ...........................................................8

*Flynt Distrib. Co., Inc. v. Harvey*,
  734 F.2d 1389 (9th Cir. 1984) ...........................................................8

*Ford v. Ely Group, Inc.*,
  621 F. Supp. 22 (W.D. Tenn. 1985) ...................................................16

*Herman v. Fashion Headquarters, Inc.*,
  992 F. Supp. 677 (S.D.N.Y. 1998) .....................................................21

*J&L Metal Polishing*,
  2016 WL 7655766 ...................................................................................12
*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ...............................................................8
*Kasten v. Saint-Gobain Performance Plastics Corp.*,
  563 U.S. 1 (2011)........................................................ 11, 12, 13, 19
*Lambert v. Ackerley*,
  180 F.3d 997 (9th Cir. 1999) .........................................................9, 12
*Lenroot v. Interstate Bakeries Corp.*,
  146 F.2d 325 (8th Cir. 1945) .................................................................18
*Marshall v. Chala Enters., Inc.*,
  645 F.2d 799 (9th Cir. 1981) .................................................................22
*Martin v. Funtime, Inc.*,
  963 F.2d 110 (6th Cir. 1992) .................................................................18
*Mitchell v. Robert DeMario Jewelry, Inc.*,
  361 U.S. 288 (1960)........................................................... 11, 12
*Odessa Union Warehouse Co-op*,
  833 F.2d ...................................................................................18
*Perez v. BabyVision Inc.*,
  No. 14-CV-7821 KMK, 2014 WL 5280392 (S.D.N.Y. Sept. 30, 2014).............11
*Perez v. Fatima/Zahra, Inc.*,
  2014 WL 2854812 (N.D. Cal. June 20, 2014)....................................13
*Perez v. Jie*,
  2014 WL 1320130 (W.D. Wash Mar. 31, 2014) ................................21
*Powell v. U.S. Cartridge Co.*,
  339 U.S. 497 (1950)...............................................................16
*Prince v. Mass.*,
  321 U.S. 158 (1944)...................................................................9
*Ray v. Henderson*,
  217 F. 3d 1234 (9th Cir. 2000) ............................................................13
*Save Our Summers v. Wash. Dep't of Ecology*,
  132 F. Supp. 2d 896 (E.D. Wash. 1999).................................................18
*Scalia v. City Serv. Transportation Inc.*,
  2021 WL 776981 (W.D.N.Y. Mar. 1, 2021) ...........................................14
*Sec'y of Lab., United States Dep't of Lab. v. Valley Wide Plastering Constr. Inc.*,
  2021 WL 410873 (D. Ariz. Feb. 5, 2021)......................................... 7, 17, 20, 22
*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) ...................................................................7
*Trailer Train Co. v. State Bd. of Equalization*,
  697 F.2d 860 (9th Cir. 1983) ...........................................................8, 18

*U.S. v. Darby*,
  312 U.S. 100 (1941)...................................................................................16
*U.S. v. Estate Preservation Servs*,
  202 F.3d 1093 (9th Cir. 2000).................................................................8, 18
*United States v. Diapulse Corp. of Am.*,
  457 F.2d 25 (2d Cir.1972)........................................................................18
*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008)........................................................................................7
*Yick v. Bank of Am., N.A.*,
  539 F. Supp. 3d 1023 (N.D. Cal. 2021)...................................................19

### Statutes

29 U.S.C. 203(l)(1)........................................................................................10
29 U.S.C. § 202.............................................................................................18
29 U.S.C. § 203(l)............................................................................................9
29 U.S.C. § 207.............................................................................................11
29 U.S.C. § 211(a) ................................................................................7, 11, 17
29 U.S.C. § 212................................................................................................2
29 U.S.C. § 212(a) ..................................................................................16, 17
29 U.S.C. § 215(a)(1)...................................................................................16
29 U.S.C. § 215(a)(3) ............................................................................12, 13
29 U.S.C. § 217 .......................................................................................8, 17, 18
29 U.S.C. §§ 212(c), 15(a)(4) .................................................................9, 10
Section 15(a)(3) ....................................................................................12, 14

### Rules

Fed. R. Civ. P. 65 ...........................................................................................7

### Regulations

29 C.F.R. Part 516........................................................................................15
29 C.F.R. Part 570.....................................................................................9, 10
29 C.F.R. § 516.2(a)......................................................................................14
29 C.F.R. § 516.5..........................................................................................14
29 C.F.R. § 516.6..........................................................................................14
29 C.F.R. § 516.7..........................................................................................14
29 C.F.R. § 570.35(a)(3)...............................................................................10
29 C.F.R. § 570.35(a)(5)...............................................................................11
29 C.F.R. § 570.61(a)....................................................................................10

29 C.F.R. § 570.61(a)(5) ............................................................................................10
29 C.F.R. §§ 516.2, 516.6 ..........................................................................................15
29 C.F.R. §§ 570.2, 570.33(b) and (i), 570.61(a) .....................................................10

## I.   INTRODUCTION

The Acting United States Secretary of Labor ("Acting Secretary") brings this urgent application for a temporary restraining order ("TRO") and order to show cause to stop the exploitation of child labor, illegal shipment of "hot goods", retaliation, overtime violations, and other unlawful abuses of the Fair Labor Standards Act ("Act" or "FLSA").

Defendants have exploited and subjected their minor employees to prohibited hazardous work at their poultry processing locations, resulting in injuries, including slicing hands and arms with sharp knives while deboning poultry, resulting in bleeding and scars. Instead of being in school, minors younger than sixteen-years-old—who are barred by statute from performing any work in poultry processing plants—stand on their feet all day, cutting and deboning chicken in meat coolers for more than forty hours per week, up to six days per week, at temperatures of 40 degrees Fahrenheit or colder.

The "hot goods" provisions of the FLSA requires that goods produced by minors or by employees whose working conditions violate the minimum requirements of the FLSA be barred from entering the stream of interstate commerce.  As Congress and the courts have made clear, the purpose of the hot goods provision is to both prevent violating employers from gaining an unfair advantage over law-abiding competitors, as well as to protect the interests of workers who have suffered substandard working conditions.

In addition to illegally employing minors in dangerous working conditions, Defendants have retaliated against their employees by lowering their pay for cooperating in this investigation. Defendants also falsely told minors that the Acting Secretary seeks to have them deported to scare minors from speaking to the Acting Secretary's representatives and to frighten the minors.

Finally, Defendants' employees work more than forty hours per week, with no overtime premium. Employees often wait for work or their pay under threat of

termination without compensation for this wait time, and Defendants have failed to maintain accurate records of employee hours worked and pay received.

Given violations above, the Acting Secretary respectfully submits this memorandum to support her application for a TRO and order to show cause why a preliminary injunction should not issue restraining and enjoining Defendants from violating the child labor (29 U.S.C. § 212), overtime (*id.* § 207), recordkeeping (*id.* § 211(c)), hot goods (*id.* §§ 212(a), 215(a)(1)), and anti-retaliation and investigation provisions of the FLSA (*id.* §§ 211(a)(1), 215(a)(3)).

## II.   FACTUAL BACKGROUND

Defendant Tony Elvis Bran ("Tony Bran") operates two poultry processing facilities and a poultry distribution operation located in La Puente and the City of Industry, in Los Angeles County, California.[1]   Tony Bran operates Defendant The Exclusive Poultry Inc. ("Exclusive Poultry"), which distributes poultry that Defendant Meza Poultry LLC ("Meza Poultry") and Defendant Valtierra Poultry LLC ("Valtierra Poultry") process.[2]   Exclusive Poultry distributes poultry across state lines.[3]   Meza Poultry operates at 15268 Proctor Ave., City of Industry, CA 91745 ("Proctor Ave") and Valtierra Poultry operates at 218 South 8th Ave., La Puente, CA 91746 ("8th Ave").[4]

Defendants Jacqueline Garcia and Francisco Javier Meza own and manage Meza Poultry and Defendants Karen Rios and Javier Valtierra own and manage Valtierra Poultry.[5]   These Defendants employ workers to debone and cut chicken using knives they sharpen daily (these workers are referred to as "deboners"

---

[1] Declaration of Maria De La Rocha ("De La Rocha Decl."), ¶ 9.

[2] *Id.*

[3] *Id.* at ¶ 33.

[4] *Id.* at ¶¶ 7, 10-11.

[5] *Id.* at ¶ 8.

herein).[6]  These Defendants also employ workers that unpack pallets of boxes of uncut poultry from delivery trucks, take them to the cutting floor for processing, repack them after they have been processed, move them into freezers for storage, and load trucks with processed chicken for delivery (these workers are referred to as "packers" herein).[7]

A. **Tony Bran Controls the Corporate Defendants and Employs the Cutter and Packer Employees.**

Tony Bran controls, manages, and finances the Corporate Defendants.  Tony Bran and his mother own the buildings where the poultry processing occurs.[8] Tony Bran identified former deboners that wanted more responsibility in the workplace—namely Defendants Karen Rios, Javier Valtierra, Jacqueline Garcia, Javier Meza, and Javier Sullon— and set them up as owners of the corporate Defendants.[9]

Tony Bran purchases unprocessed poultry and exclusively relies on Valtierra Poultry and Meza Poultry for processing.[10]  Tony Bran then delivers the processed poultry to downstream purchasers.[11]  Each week, Tony Bran gives Valtierra Poultry and Meza Poultry a check that they use to pay the deboner and packer employees and sets the rate of pay employees receive per box they cut.[12]  Tony Bran determines what time deboners and packers must be at work because he

---

[6] *Id.* at ¶ 9.

[7] *Id.*

[8] *Id.*

[9] Declaration of Nisha Parekh ("Parekh Decl.") ¶ 2, Exhibit 1 (Administrative Deposition of Tony Bran) ("Bran Dep."), 248:23-249:8, 249:22-251:3.

[10] Bran Dep., 138:9-16; De La Rocha Decl. ¶ 9.

[11] De La Rocha Decl., ¶ 9.

[12] Parekh Decl. ¶ 3, Exhibit 2 (Administrative Deposition of Karen Rios) ("Rios Dep."), 96:12-98:13, 99:18-24, 105:16-23; Bran Dep. 138:9-139:2.

coordinates with his vendors and clients to determine what time uncut poultry deliveries will arrive in the morning and what time they need to be processed by.[13] Tony Bran holds the USDA license that Valtierra Poultry and Meza Poultry need to operate.[14] Tony Bran provides training materials to Valtierra Poultry and Meza Poultry to ensure Deboners are following USDA requirements, and disciplines employees who are not cutting poultry properly.[15]

**B.      Employees Work More than 40 Hours in a Week and Defendants Do Not Pay an Overtime Premium.**

Deboners and packers routinely work more than forty hours per week—Monday through Friday they start around 5:00 am and end at 1:00 pm or later, and Saturdays they start around 5:00 am and work until about 12:00 pm or later.[16] Deboner employees are only paid for the number of boxes of poultry they debone and cut each day.[17] Packer employees are either paid an hourly rate, or a lump sum regardless of hours worked, and their pay approximates the prevailing minimum wage.[18] Deboners and packers, however, are not paid any overtime premium for hours they work over forty in a week.[19]

**C.      Defendants Employ Minor Employees that Perform Hazardous**

---

[13] Bran Dep., 108:3-109:3, 109:9-110:11, 110:22-25, 112:23-113:9.

[14] *Id.* at 119:23-120:5, 228:20-24.

[15] *Id.* at 229:6-232:6.

[16] Rios Dep. 177:6-179:3, 189:14-21; De La Rocha Decl. ¶¶ 16, 35-36, 38; Declaration of Cindy Pena ("Pena Decl."), ¶ 4; Declaration of Gisela Chan ("Chan Decl."), ¶¶ 4-6; Declaration of Ishmael Alvarez ("Alvarez Decl."), ¶¶ 4-7.

[17] De La Rocha Decl. ¶ 38; Pena Decl. ¶ 4, 6; Chan Decl. ¶¶ 4-5; Alvarez Decl., ¶¶ 4-6.

[18] De La Rocha Decl., ¶¶ 35-36; Decl. Pena, ¶ 5; Chan Decl. ¶ 6; Alvarez Decl. ¶ 7.

[19] De La Rocha Decl., ¶¶ 16, 22, 35-36, 37; Rios Dep. 175:23-25, De La Rocha Decl. at ¶¶ 16, 22; Chan Decl. ¶¶4-6; Alvarez Decl. ¶¶ 4-7.

**Job Duties in Unsafe Working Conditions.**

Since at least 2020, minors under the age of eighteen have worked as deboners and packers.[20]  Minors work the same shifts as other employees, regularly working more than forty hours a week, without receiving an overtime premium.[21]  Children between the ages of fourteen and seventeen—and a reported eleven-year-old—have worked as deboners.[22]  Minors have been injured performing these hazardous occupations, including cutting themselves.[23]  Many of these minors have not been in school and instead have worked full time for the Defendants.[24]

**D.      Defendants Interfered with the DOL's Investigation and Retaliated Against Employees**

On August 31, 2023, Bran rounded up employees at the 8th Ave location, yelled at them, and cut their pay for purportedly speaking with the Department of Labor.[25]  He told employees that he was reducing their pay because they had "opened their traps" to WHD.[26]  On September 14, 2023, Defendant Karen Rios prevented WHD from entering Valtierra Poultry.[27]  Employees have informed WHD of instances where the employer hid minor employees in closets and bathrooms so they could not be found by investigators.[28]  Valtierra Poultry, Meza

---

[20] De La Rocha Decl., ¶ 22.

[21] De La Rocha Decl. ¶ 22; Pena Decl., ¶ 4.

[22] De La Rocha Decl. ¶¶ 20, 22; Pena Decl., ¶ 4.

[23] De La Rocha Decl. ¶ 22.

[24] *Id.*

[25] De La Rocha Decl. ¶ 5, 23; Chan Decl. ¶ 5.

[26] De La Rocha Decl. ¶ 23; Chan Decl. ¶ 5.

[27] *Id.* at ¶ 28.

[28] *Id.* at ¶ 22.

Poultry, Exclusive Poultry, Karen Rios, Javier Meza, Jacqueline Garcia, and Tony Bran have failed to produce all responsive subpoenaed records.[29]

### E.     Defendants Refused To Stop Shipping Hot Goods.

When hot goods have been identified, the Acting Secretary's representatives notify the violating parties about the Acting Secretary's determination as to why the goods are "hot" and objects to the shipment of those goods by requesting that their shipment in commerce be restrained voluntarily.[30]   After discussion with the employer, representatives from the Department of Labor may also notify all intended recipients of the goods, known as down-stream purchasers, of the Department's investigative findings, offering the employer an opportunity to participate in those communications.[31]   By providing notice to all potential shippers, the Department seeks to obtain voluntary compliance from all interested parties in preventing the entry of hot goods into interstate commerce.[32]   Further, because the FLSA provides an exception for certain good faith purchasers, the failure to notify downstream purchasers that may ship those goods may result in the shipment of hot goods into the stream of interstate commerce.[33]   Should the employer and intended recipients agree to restrain shipment of the hot goods, the Department attempts to resolve the matter short of initiating litigation, exercising discretion as to the settlement terms which maximize enforcement of the FLSA.[34]

The poultry products produced by Defendants are, in the regular course of business, transported or shipped in interstate commerce.[35]   Wage and Hour notified

---

[29] De La Rocha Decl. ¶ 30; Parekh Decl. ¶¶ 4-7.

[30] *See* Declaration of Michael Eastwood ("Eastwood Decl."), ¶ 4.

[31] *Id*. at ¶ 5.

[32] *Id*. at ¶ 6.

[33] *Id*. at ¶ 7.

[34] *Id*. at ¶ 8.

[35] De La Rocha Decl. ¶ 33.

Defendants Tony Elvis Bran and The Exclusive Poultry, Inc.; Karen Rios, Juan Valtierra and Valtierra Poultry LLC; and Francisco Javier Meza and Meza Poultry LLC that their products were "hot" and asked them to voluntarily refrain from shipping.[36]  These Defendants did not agree to voluntarily refrain from shipping.[37]

### III.   A TEMPORARY RESTRAINING ORDER IS REQUIRED TO RESTRAIN DEFENDANTS' OPPRESSIVE CHILD LABOR, RETALIATION, AND WAGE VIOLATIONS PROHIBITED BY FLSA.

The Acting Secretary may obtain a temporary restraining order or preliminary injunction where (1) she is likely to prevail on the merits or has raised "serious questions going to the merits" of the legal issue; (2) she will likely suffer irreparable injury if an injunction is not granted; (3) the balance of equities and hardships tips in her favor; and (4) the public interest lies in her favor. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21-22 (2008)); *see also* Fed. R. Civ. P. 65. Preliminary relief is appropriate where "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Cottrell*, 632 F.3d at 1131 (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

A party need not show irreparable harm to obtain preliminary injunctive relief if the conduct to be enjoined violates federal statute which specifically provides for injunctive relief. *See Sec'y of Lab., United States Dep't of Lab. v.*

---

[36] Declaration of Daniel A. Pasquil, ¶¶ 5, 6.

[37] Parekh Decl. ¶ 8.

*Valley Wide Plastering Constr. Inc.*, 2021 WL 410873, at *3 (D. Ariz. Feb. 5, 2021) (granting the Secretary's motion for preliminary injunction to remedy 29 U.S.C. § 211(a) recordkeeping violation because "in a case involving statutory enforcement, where the applicable statute authorizes injunctive relief, the traditional irreparable injury showing is not required") (quoting *F.T.C. v. Consumer Def., LLC*, 926 F.3d 1208, 1214 (9th Cir. 2019)). Here, 29 U.S.C. § 217 provides that "district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title." Accordingly, the Court presumes the existence of irreparable injury. In such circumstances, the Secretary need only prove likelihood of success on the merits, as Congressional action has appropriately set the nature of the injury to be avoided, balanced the hardships, and accounted for the public interest. *U.S. v. Estate Preservation Servs*, 202 F.3d 1093, 1098 (9th Cir. 2000) (citing *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983), *cert. denied*, 464 U.S. 846 (1983)).[38] Although not required under settled precedent, the Acting Secretary nevertheless addresses all elements generally required to show that a temporary restraining order is necessary.

## A.      The Acting Secretary is Likely to Succeed on the Merits.

The FLSA guarantees minimum labor standards, which include restrictions against oppressive child labor practices, employer obligations to pay overtime and keep certain records, and prohibitions against retaliation and interference with employees' and the Acting Secretary's rights under the FLSA. Here, Defendants

---

[38] Additionally, where a party seeks a temporary restraining order or preliminary injunction, the court applies relaxed evidentiary standards for admissibility. A district court may "consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

have flouted and violated each of these obligations, and the Acting Secretary is likely to succeed in proving each of these claims.

## 1. Defendant Tony Bran and The Exclusive Poultry, Inc. Will Be Held Liable for Violations of the FLSA and Must Be Bound by an Injunction.

The Ninth Circuit is clear that "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the [FLSA], and is subject to liability." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (citation omitted); *see also Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) ("[r]egardless of whether [defendants] are viewed as having had the power to hire and fire, their power over the employment relationship by virtue of their control over the purse strings was substantial"). Because Bran controls all aspects of the operation of the poultry processing facilities, as discussed in Section II.A. *supra*, he is liable for any FLSA violations.

## 2. Defendants Employ Oppressive Child Labor in Violation of the FLSA.

The Acting Secretary is likely to prevail in establishing that Defendants' employment of minors violated the FLSA's child labor prohibitions, Sections 12(c) and 15(a)(4), and regulations promulgated thereunder. 29 U.S.C. §§ 212(c), 15(a)(4); 29 C.F.R. Part 570. As the Supreme Court has recognized, this law serves to protect minors from the evils of the "crippling effects of child employment." *Prince v. Mass.*, 321 U.S. 158, 168 (1944). There is no question that "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies . . ." *Id.*

> Prohibited "oppressive child labor" is defined, in relevant part, as:
> [A] condition of employment under which (1) any employee under the age of sixteen years is employed by an employer … in any

---

occupation, or (2) any employee between the ages of sixteen and eighteen years is employed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages or detrimental to their health or well-being . . . .

29 U.S.C. § 203(l). The Acting Secretary establishes a violation of the FLSA's child labor prohibition by showing: (1) the minor employee's age; (2) that the minor performed work for an employer, other than a parent; and (3) that the work constituted "oppressive child labor." 29 U.S.C. § 212(c). DOL regulations limit when and under which conditions employers may employ minors without employing oppressive child labor. *See* 29 C.F.R. Part 570. Defendants have repeatedly and willfully endangered their minor employees by violating these regulations.

Under Section 3(l) of the FLSA, and 29 C.F.R. Part 570, Defendants' employment of minor employees under the age of 16 to work at its poultry processing facilities is *per se* unlawful. Specifically, child labor regulations make it unlawful for employers to use minors under the age of 16 for occupations in or about slaughtering and meat packing establishments, work in the preparation of meats for sale, as well as work in freezers and meat coolers. *See* 29 U.S.C. 203(l)(1), 29 C.F.R. §§ 570.2, 570.33(b) and (i), 570.61(a). Defendants' employment of these children at their poultry processing facilities is unlawful.

Defendants' employment of minors between the ages of 16 and 18 years old is also unlawful, as the work that these minors perform is "particularly hazardous." Under the FLSA, minors between the ages of 16 and 18 are prohibited from performing work in certain occupations which the Secretary of Labor has deemed to be "particularly hazardous" or "detrimental to their health or well-being."  *See* 29 C.F.R. § 570.61(a). Such work includes "all boning occupations," defined as the removal of bones from meat cuts. 29 C.F.R. § 570.61(a)(5).

As discussed in Section II.C. *supra*, the Acting Secretary has demonstrated

that Defendants regularly employ minors under the ages of eighteen and minors under the age of sixteen who are not in school to debone poultry in meat coolers. Section I.C. further establishes that Defendants have forced their minor employees to work unlawful hours, to wit: more than 18 hours in a week; *see* 29 C.F.R. § 570.35(a)(3); and more than 3 hours in a day when school is in session, including Fridays, 29 C.F.R. § 570.35(a)(5).

Accordingly, the Acting Secretary is likely to prevail in showing that Defendants unlawfully employ oppressive child labor in violation of Sections 15(a)(4) and 212(c) of the FLSA.

### 3.    Defendants Have Violated the FLSA Overtime Provisions.

The Acting Secretary is likely to prevail in proving that Defendants are in violation of Section 7 of the FLSA. That section requires employers to pay their employees at a rate of time and one half for all hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 207.

As discussed in Section II.B. *supra*, there is overwhelming evidence that Defendants' employees routinely worked over 40 hours in a workweek but did not receive overtime pay.  Accordingly, the Acting Secretary has established a likelihood of success on her Section 7 overtime claim.

### 4.    Defendants Interfered with the Acting Secretary's Investigation.

The Acting Secretary is likely to prevail in proving that Defendants unlawfully interfered with the Acting Secretary's investigation.  The FLSA grants the Secretary of Labor broad authority to investigate employers.  29 U.S.C. § 211(a).  The Secretary's ability to uphold the FLSA "relies . . . upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). Employee cooperation is essential to the Secretary's enforcement.  Indeed,

the provision granting the Secretary authority to conduct investigations also directs the Secretary to seek injunctive relief to enjoin employers from impeding any such investigation. *See* 29 U.S.C. § 211(a); *Perez v. BabyVision Inc.*, No. 14-CV-7821 KMK, 2014 WL 5280392, at *2 (S.D.N.Y. Sept. 30, 2014) (enjoining defendants from violation Section 11(a) or obstructing the Secretary's investigation "in any way," including "instructing any individual not to speak to representatives of the Secretary"); *Perez v. Abbas*, No. 5:13-CV-04208-EJD, 2015 WL 2250436, at *10 (N.D. Cal. May 13, 2015) (same).

Defendants have willfully interfered with the WHD's investigation for months and have a demonstrated record of interfering with the Wage and Hour Division's investigation in this matter. This includes threatening workers with pay reduction for allegedly speaking to WHD, hiding minors from WHD investigators, and refusing to produce subpoenaed records, as described in Section II.D., *supra*.

Accordingly, the Acting Secretary is likely to succeed on her claims that Defendants violated Sections 15(a)(5) and 11(a) of the FLSA.

### 5.   Defendants Retaliate against Employees for FLSA-Protected Activities.

The Acting Secretary is likely to prevail on her claim of unlawful retaliation. Section 15(a)(3) of the FLSA provides that is unlawful to discriminate against an employee "in any manner" because that employee has participated in an FLSA enforcement matter. 29 U.S.C. § 215(a)(3). This provision is critical to the enforcement scheme of the FLSA by preventing "fear of economic retaliation" from inducing workers to "quietly . . . accept substandard conditions." *Kasten*, 563 U.S. at 12. Section 15(a)(3) is "designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Lambert*, 180 F.3d at 1004. This is because "effective enforcement" of the FLSA can "only be expected if employees [feel] free to approach officials with their grievances." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292

(1960).

To establish a *prima facie* case of retaliation under the FLSA, the Secretary need only show that an individual or group of individuals (1) engaged in—or are perceived to have engaged in—activity protected by the FLSA; (2) suffered adverse employment action by the employer; and (3) a causal connection exists between the activity and the employer's adverse action. *J&L Metal Polishing*, 2016 WL 7655766, at *5 (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997)). District courts repeatedly grant preliminary relief to redress threats and actions similar to those made here by Defendants.

### i. Employees Have Engaged in Protected Activity.

Worker cooperation with government investigators and provision of truthful testimony during deposition or other court proceedings are *per se* protected activity. *See Perez v. Fatima/Zahra, Inc.*, 2014 WL 2854812, at *3 (N.D. Cal. June 20, 2014); 29 U.S.C. § 215(a)(3) (protecting any employee who "has testified or is about to testify" in FLSA proceeding). When employees provide information evidencing a violation of the FLSA, they not only make protected oral complaints, *Kasten*, 563 U.S. at 7–17, but also "cause to be instituted" proceedings under the FLSA, 29 U.S.C. § 215(a)(3). Such cooperation must be protected, as noted in *Kasten*, to promote FLSA enforcement.

Employees have engaged in protected activity by speaking with the WHD about Defendants' FLSA violations, as described in Section II in detail. The protected activities of speaking with the WHD and engaging as potential witnesses are likely to continue until this case is resolved.

### ii. Defendants Have Taken an Adverse Action.

The Ninth Circuit has taken "an expansive view of the type of actions that can be considered adverse employment actions." *Ray v. Henderson*, 217 F. 3d 1234, 1243 (9th Cir. 2000). Thus, retaliation is actionable if an employment decision is "reasonably likely to deter employees from engaging in protected

activity." *Acosta v. Southwest Fuel Management, Inc.*, 2018 WL 739425, at *4 (C.D. Cal. Feb. 2. 2018) (citing *Ray*).  Defendants cut employees pay because employees "opened their traps" to WHD.  *See* Section II.D., *supra*.  Such a threat clearly constitutes an adverse action "reasonably likely to deter employees" from speaking with the Department of Labor.

### iii.   There Is A Causal Link Between the Protected Activity and Adverse Action.

Finally, a party claiming retaliation under the FLSA must show a causal link between the protected activity and the adverse action.  *See Blackie v. State of Me.*, 75 F.3d 716, 723 (1st Cir. 1996).  The "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Conner*, 121 F.3d at 1395 (citations omitted).

Here, the climate of threats and direct references to protected activities, as well as the extraordinarily close timing between the adverse actions and those activities, demonstrate causation. Defendants' adverse activities occurred immediately after employees spoke with the WHD, and Bran's direct reference to employees contact with Department of Labor officials makes clear that his statements were in response to the lawful exercise of employee rights under the FLSA.

Accordingly, the Acting Secretary is likely to succeed in establishing that Defendants' coercive intimidation of employees and unlawful retaliatory acts violated FLSA Section 15(a)(3).

### 6.   Defendants Do Not Maintain Accurate Employee Time and Pay Records.

The FLSA requires Defendants to maintain and, upon demand by the WHD, produce employee records which include employees' full names and ages, addresses, telephone numbers, social security numbers, rates of pay, dates of

employment, and shifts worked among other information. *See* 29 C.F.R. § 516.2(a); 29 C.F.R. § 516.5; 29 C.F.R. § 516.6; 29 C.F.R. § 516.7 (records must be maintained in accessible location and "made available within 72 hours following notice from the Administrator [of the Wage and Hour Division] or a duly authorized and designated representative"); *see also Scalia v. City Serv. Transportation Inc.*, 2021 WL 776981, at *1 (W.D.N.Y. Mar. 1, 2021) (issuing civil contempt per diem sanctions for failure to produce in response to administrative subpoena "payroll records, books, and documents regarding wages paid, hours worked, and other conditions and practices of employment, as well as the records of related businesses" because respondents are required by law to maintain the requested records, *see* 29 C.F.R. §§ 516.2, 516.6, [and thus] they should be able to produce them quickly.").

Defendants have employers produced some records but have refused to produce all relevant time and pay records, many of which are required to be maintained and preserved under Section 11 of the FLSA and 29 C.F.R § 516.2. Defendants' failure to produce documents and information which they are required to maintain under 29 C.F.R. Part 516 is sufficient to show a likelihood of success on the merits.

### 7.    Defendants Have Violated the FLSA's "Hot Goods" Provisions.

Defendants have violated, and will continue to violate, the FLSA's "hot goods" provisions, which make it unlawful to introduce into interstate commerce goods, such as poultry, that have been produced in violation of the FLSA's overtime and child labor provisions.

Specifically, Section 15(a)(1) of the FLSA prohibits "any person" from introducing into interstate commerce goods produced in violation of the FLSA's overtime provisions. *Citicorp Industrial Credit, Inc., v. Brock*, 483 U.S. 27, 28 (1987). It states, in relevant part, that:

> it shall be unlawful for any person – (1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of section 206 or section 207 of this title, or in violation of any regulation or order of the Secretary issued under section 214 of this title . . . .

29 U.S.C. § 215(a)(1).

Similarly, Section 12 of the FLSA prohibits producers, manufacturers, and dealers from shipping or delivering in interstate commerce, or delivering for shipment in interstate commerce, any goods produced in an establishment where "oppressive child labor has been employed" within thirty days of shipping those goods. 29 U.S.C. § 212(a).

The FLSA's hot goods provisions further its broad regulatory purpose "that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions, which competition is injurious to the commerce." *Citicorp Industrial Credit, Inc.*, 483 U.S. at 37 (citing *U.S. v. Darby*, 312 U.S. 100, 115 (1941)); *see also* 81 Cong. Rec. 4960, 4961 (1937) ("only goods which have been produced under conditions which meet the minimum standards of free labor shall be admitted to interstate commerce. Goods produced under conditions which do not meet rudimentary standards of decency should be regarded as contraband and ought not to be allowed to pollute the channels of interstate trade") (quoted with approval in *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 516 (1950)).

Prohibiting the shipment of goods produced in violation of the FLSA serves several fundamental statutory purposes. In addition to ensuring that employers who violate the FLSA do not enjoy an unfair competitive advantage over their law-abiding peers, *Ford v. Ely Group, Inc.*, 621 F. Supp. 22, 25 (W.D. Tenn. 1985), the hot goods provision serves to incentivize employers to adhere to the FLSA's

minimum wage and overtime requirements.  *See U.S. v. Darby*, 312 U.S. 100, 109–110, 117 (1941); *Powell*, 339 U.S. at 510.  The hot goods provision also serves to protect the interests of those workers who have suffered substandard working conditions during the production of such goods.  Excluding hot goods from interstate commerce is more than a simple enforcement mechanism to achieve other statutory aims: it is itself one of the central purposes of the FLSA. *See Citicorp Indus. Credit Inc. v. Brock*, 483 U.S. 27, 36 n.8 (1987).

The Secretary of Labor is charged with enforcing the provisions of the FLSA.  *See* 29 U.S.C. § 211(a).  If the employer and intended recipients refuse to restrain shipment, Section 17 of the FLSA expressly provides that the Court may order the parties to do so.  *See* 29 U.S.C. § 217.

In this matter, and as set forth above, there is overwhelming evidence of overtime and child labor violations, rendering the poultry products produced by Defendants at its 8th Ave and Proctor Ave facilities "hot" within the meaning of Sections 12 and 15 of the FLSA. Because these poultry products are now considered "contraband," *see Citicorp Industrial Credit, Inc.,* 483 U.S. at 39 ("'Hot goods' are not inherently dangerous, but Congress has determined that they are contraband nonetheless"), they are forbidden by law from entering interstate commerce.  *See* 29 U.S.C. §§ 212(a), 215(a).

Defendants' refusal to stop shipping "hot" goods when WHD requested they do so, as described in Section I.E., *supra*, necessitates immediate judicial intervention.  Without a Court order, Defendants will continue to introduce illegal goods, produced by minors as young as fourteen and by other employees who work more than forty hours a week but do not receive overtime pay, into the stream of interstate commerce, in violation of Sections 12 and 15 of the FLSA.

**B.     Defendants' Employees, the Department of Labor, and the Public Will Suffer Irreparable Harm Absent a Temporary Restraining Order.**

As stated above, because the Secretary brings this enforcement action under Section 217 of the FLSA, which specifically authorizes injunctive relief, she does not need to demonstrate irreparable injury. *See Valley Wide Plastering Constr. Inc.*, 2021 WL 410873, at *3. Nevertheless, a temporary restraining order is crucial to prevent irreparable harm to Defendants' employees, including those under 18 years of age, the Secretary, and the public. Indeed, "[t]he purpose of issuing an injunction against future violations [of the FLSA] is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations." *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992) (citation omitted). Here, a temporary restraining order is central to preventing irreparable harm.

### 1. Defendants' Employment of Minors in Oppressive Child Labor Inherently Causes Irreparable Harm to the Minors and to the Public.

Defendants' unlawful employment of oppressive child labor, in and of itself, causes irreparable harm, as determined by Congress. *See Odessa Union Warehouse Co-op*, 833 F.2d at 175; *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010); *Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir. 2000) (citing *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983); *see also United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 27 (2d Cir.1972) ("[T]he function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants."). The FLSA's remedial purpose as set forth in Section 2, 29 U.S.C. § 202, counsels courts not to administer its injunction provisions "grudgingly." *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 327 (8th Cir. 1945); *see also* 29 U.S.C. § 217.

Even without such a presumption, a temporary restraining order is necessary

here to prevent further injuries to minor employees, including potentially debilitating or fatal injuries. *See Save Our Summers v. Wash. Dep't of Ecology*, 132 F. Supp. 2d 896, 905 (E.D. Wash. 1999) ("The risk of physical injury . . . is sufficient to establish a risk of irreparable harm."). The minor employees are relying on this Court to end Defendants' rampant and extensive employment of oppressive child labor. As such, this Court should grant a temporary restraining order enjoining Defendants from continuing to employ its minor employees in violation of the FLSA.

> ### 2.      Defendants' Failure to Pay Overtime Causes Irreparable Harm.

Courts have recognized that lost wages for low-wage workers can rise to the level of irreparable harm. *See Yick v. Bank of Am., N.A.*, 539 F. Supp. 3d 1023, 1025–26 (N.D. Cal. 2021) ("human beings can establish irreparable harm by showing that losing wages or benefits will likely cause them to be evicted, go hungry, or be denied necessary medical care."). Indeed, "[w]hen a case involves the deprivation of wages or benefits to low-income people living hand to mouth, a preliminary injunction may well be warranted . . ." *Id.* at n.1; *Carrillo v. Schneider Logistics, Inc.*, 823 F. Supp. 2d 1040, 1045 (C.D. Cal. 2011) ("Because plaintiffs are low-wage workers, and lost wages or delays in compensation threaten or impair their ability to meet basic needs, such harms are irreparable."). The workers here are low wage workers, including low wage minor employees, who regularly work more than forty hours per week and are not being paid an overtime premium. The harm of wage theft to these workers is unquantifiable and irreparable.

> ### 3.      Defendants' Interference of the Secretary's Investigation, including Retaliation, causes Irreparable Harm to the Acting Secretary.

The Acting Secretary relies heavily on cooperation from employees to carry out her investigative and enforcement duties provided under the Act. *Kasten*, 563

U.S. at 11.  It is well-established that an employer's retaliatory acts cause irreparable harm by deterring potential complainants or witnesses from coming forward to challenge the employer's illegal conduct.  *See Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938-39 (9th Cir. 1987) (noting "allegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss").

Here, the Acting Secretary, Defendants' employees, as well as the public, will be irreparably harmed if Defendants are not enjoined from their continued efforts to thwart the Acting Secretary's investigation and to deter employees from cooperating with the Department of Labor.  Defendants have stymied the Acting Secretary's ability to conduct her investigation, prejudicing her ability to prosecute this case and vindicate the rights of employees.  Their actions also prejudice the Court's judicial fact-finding process.  Moreover, Defendants' actions irreparably harm the public at large – particularly Defendants' law-abiding competitors whose businesses are undercut by Defendants' unfair and unlawful business practices, will be adversely affected.  *See Danneskjold v. Hausrath*, 82 F.3d 37, 40 (2d Cir. 1996) ("[O]ne of the primary purposes of the FLSA" is "preventing unfair competition among employers if some were able to pay less than the minimum wage").  Simply put, the government should be entitled to conduct its investigation without interference and workers who seek to present truthful information and cooperate with the government must be protected from retaliation.

A court order that enjoins Defendants' from engaging in this sort of unlawful conduct is necessary to ensure truthful testimony and the integrity of this proceeding. A temporary restraining order is crucial to prevent irreparable harm to Defendants' employees, the Acting Secretary, and the public.

> **4.    Defendants' Failure to Maintain Accurate Employee Time and Pay Records Causes Irreparable Harm to the Acting Secretary.**

Defendants' failure to maintain accurate employee time and pay records "greatly interferes with the DOL and employees' ability to determine the extent of wages owed," which "constitutes serious damage." *Valley Wide Plastering Constr. Inc.*, 2021 WL 410873, at *4. Absent immediate injunctive relief, Defendants' records which go to the heart of proving some of Defendants' wage and oppressive child labor violations relating to hours worked may be irretrievably lost.

> **5.      Defendants Introduction of "Hot Goods" into the Stream of Interstate Commerce Causes Irreparable Harm to the Acting Secretary, Employees, and the Public.**

Defendants' introduction of "hot goods" into the marketplace will cause irreparable harm to the Acting Secretary, Defendants' employees, and the public. Specifically, without an injunction, Defendants will continue to introduce into the stream of interstate commerce "hot good" poultry products. The further these goods travel down the commerce stream and away from their unlawful source, the greater the difficulty there will be with the Acting Secretary's ability to police and stop the unlawful transportation of such goods, which is a critical tool to stop employers from exploiting their workforce. Further, allowing Defendants to introduce goods that "have been produced under substandard labor conditions" unfairly allows them to "gain a competitive edge over similar products, pricing these products out of the market and causing irreparable harm to producers who do comply with the federal government's labor laws." *Acosta v. RK Apparel Inc.*, 2018 WL 1942400, at *3 (C.D. Cal. Mar. 15, 2018); *see also Herman v. Fashion Headquarters, Inc.*, 992 F. Supp. 677, 680-81 (S.D.N.Y. 1998) (finding irreparable harm "wrought by the introduction of hot goods into the stream of commerce").

Accordingly, an injunction to stop Defendants from introducing "hot goods" into interstate commerce is necessary and appropriate.

////

////

C.     **The Balance of Equities and the Public Strongly Favor the Acting Secretary.**

The balance of equities tilts sharply in the Secretary's favor, and entering a TRO is decidedly in the public interest. *Cal Pharms. Ass'n v. Maxwell-Jolly*, 572 F.3d 847, 657-58 (9th Cir. 2009) (the court may consider the last two *Winter* factors together). In considering the balance of equities in a case involving the Secretary, "the Court 'must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private right.'" *Perez v. Jie*, 2014 WL 1320130, at *2 (W.D. Wash Mar. 31, 2014) (quoting *Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 802 (9th Cir. 1981)). "On the other hand, Defendants do not have a legitimate interest in violating the FLSA." *Valley Wide Plastering Constr. Inc.*, 2021 WL 410873, at *4.

Further with respect to the hot goods injunction, the balancing of the potential injuries to the Secretary and Defendants weighs soundly in favor of the Secretary.  First Defendants can point to no legal right to profit from oppressive child labor. Second, an injury to the Secretary, who is charged with enforcing the FLSA's minimum working standards, is an injury to the public at large.  On the other side of the scales lies the comparatively negligible hardship to Defendants who will be barred from placing "hot goods" into interstate commerce. Such a hardship is merely pecuniary, in that they may not receive as much money for the goods as they had hoped, a result that is in no way unjust or unexpected under the circumstances of this case.  The requirements on employers not to employ children in hazardous jobs and to pay overtime rates required under the FLSA – a federal law that has been in existence for over eighty years – should come as no surprise to Defendants.

IV.   **CONCLUSION**

The Secretary respectfully asks the Court to enter a Temporary Restraining Order prohibiting Defendants from any further use of oppressive child labor,

failing to pay overtime, retaliation, interference with the Secretary's investigation, and failure to maintain accurate records in violation of the FLSA, and an Order to Show Cause why a Preliminary Injunction should not issue.

The Secretary submits herewith a Proposed Order.

September 30, 2023                    Respectfully submitted,

                                     SEEMA NANDA
                                     Solicitor of Labor

                                     MARC A. PILOTIN
                                     Regional Solicitor

                                     BORIS ORLOV
                                     ANDREW J. SCHULTZ
                                     KATHERINE E. CAMERON
                                     Counsels for Wage and Hour

                                     ANDREW M. KATZ
                                     Senior Trial Attorney

                                      /s/ Nisha Parekh
                                     NISHA PAREKH
                                     Trial Attorney

---